**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**In Re:**

**Fady Abdo El-Bahri**                                    **Case No. 3:17-bk-03265**
                                                         **Chapter 11**

      **Debtor.**

_____/


**DEBTOR-IN-POSSESSION'S COMBINED**
**DISCLOSURE STATEMENT AND CHAPTER 11**
**PLAN OF REORGANIZATION**


Dated May 10, 2019


The Law Offices of Jason A. Burgess
1855 Mayport Road
Atlantic Beach, Florida  32233
(904) 372-4791

Attorneys for Debtor-In-Possession

## INTRODUCTION

Fady Abdo El-Bahri, an Individual and Debtor (the "**Debtor-In-Possession**"), proposes the following plan of reorganization to resolve outstanding claims against the Debtor in its case under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Code**").

THE INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN (THIS "**PLAN**") IS INCLUDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THIS PLAN. THE INFORMATION CONTAINED IN THIS PLAN MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THIS PLAN. NO ENTITY, OTHER THAN THE DEBTOR-IN-POSSESSION, MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, REGARDING THIS PLAN OR THE SOLICITATION OF ACCEPTANCES OF THIS PLAN.

The Debtor-In-Possession is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. Subject to certain restrictions and requirements set forth in this Plan and in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, The Debtor-In-Possession reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms of this Plan, the Confirmation Order, and the Bankruptcy Code.

All holders of claims and interests are encouraged to read this Plan and the accompanying materials in their entirety before voting to accept or reject this Plan. No materials, other than the exhibits, appendices, or schedules attached to or referred to in this Plan have been approved by the Debtor-In-Possession is soliciting acceptances of this Plan.

## ARTICLE I
## DEFINED TERMS, RULES OF
## INTERPRETATION AND COMPUTATION OF TIME

### 1.1 Defined Terms

As used in this Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

a. "**Administrative Claim**" means a Claim for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date to preserve the Estate and operate the business of the Debtor, including

Claims based on liabilities incurred by the Debtor in the ordinary course of its business (b) Professional Fee Claims; and (c) U.S. Trustee Fees.

**b.**  **"Administrative Claim Bar Date"** means the date established by Local Rule 3071-1 by which all requests for payment of Administrative Claims are required to be filed with the Bankruptcy Court.

**c.**  **"Allowed"** means a Claim that is allowed pursuant to the terms of this Plan.

**d.**  "**Allowed Class . . . Claim"** means an Allowed Claim in the particular Class described in this Plan.

**e.**  **"Assets"** means all property of the Estate within the meaning of section 541 of the Bankruptcy Code, of any nature whatsoever, including, without limitation, all property, real and personal, tangible and intangible, wherever situated, as such property exists on the Effective Date or thereafter.

**f.**  **"Bankruptcy Case"** means the Chapter 11 case pending for the Debtor in the Bankruptcy Court.

**g.**  **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

**h.**  **"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida.

**i.**  **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

**j.**  **"Bar Date"** means the applicable bar date by which a Proof of Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including a Bar Date Order and the Confirmation Order.

**k.**  **"Bar Date Order"** means any order of the Bankruptcy Court establishing Bar Dates for filing proofs of Claims in the Bankruptcy Case.

**l.**     **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**m.**     **"Cash"** means the legal tender of the United States of America.

**n.**     **"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code.

**o.**     **"Class"** means a class of Claims as described in Article II.

**p.**     **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

**q.**     **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**r.**     **"Confirmation Hearing"** means the hearing(s) held by the Bankruptcy Court concerning Confirmation of this Plan, including all hearings under Section 1129 of the Bankruptcy Code, as such hearings may be continued from time to time.

**s.**     **"Confirmation Order"** means the order or orders of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**t.**     **"Creditor"** means the holder of a Claim.

**u.**     **"Debtor-In-Possession"** has the meaning set forth in the introductory paragraph.

**v.**     **"Distribution"** shall mean funds to be paid or instruments to be issued to holders of Claims and Interests pursuant to this Plan.

**w.**     **"Distribution Date"** shall mean the dates upon which Distributions may be made pursuant to this Plan.

**x.**     **"Effective Date"** means the 1st of the month following the date upon which the Order Confirming Plan becomes final and non-appealable.

**y.**     **"Entity"** means an individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership, limited liability company or other business entity.

**z.** **"Equity Claim"** means a legal, equitable or contractual Claim arising from any share or other stock ownership interest in the Debtor.

**aa.** **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

**bb.** **"Executory Contract or Unexpired Lease"** means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code.

**cc.** **"Final Order"** means an order or judgment of the Bankruptcy Court as entered on the docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Liquidating Agent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired. If any provision of this Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Debtor may waive such requirement in accordance with this Plan with Court approval.

**dd.** **"General Unsecured Claim"** means an Unsecured Claim that is not an Administrative Claim, a Cure Amount Claim, an Equity Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

**ee.** **"Interest"** means: (a) any share or other ownership interest in the Debtor, whether or not transferable or denominated "stock," or similar security and (b) any Equity Claim.

**ff.** **"Petition Date"** means September 4, 2017

**gg.** **"Post-Confirmation Administrative Claim"** shall mean a Claim for services rendered or expenses incurred after the Effective Date in connection with this Bankruptcy Case.

**hh.** **"Plan"** means this Combined Disclosure Statement and Chapter 11 Plan of Reorganization filed by the Debtor-In-Possession, as the same may be amended, modified or supplemented.

**ii.** **"Priority Claim"** means a Claim against the Debtor that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

**jj.** **"Priority Tax Claim"** means a Claim arising under federal, state or local Tax laws that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**kk.** **"Professional"** means any professional employed in the Bankruptcy Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to section 503(b)(4) of the Bankruptcy Code.

**ll.** **"Professional Fee Claims"** mean the Claims of (a) any Professional in the Bankruptcy Case pursuant to sections 330 or 1103 of the Bankruptcy Code or (b) any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to sections 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

**nn.** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

**oo.** **"Secured Claim"** means a Claim against the Debtor for extensions of credit to the Debtor that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the holder of such Claim's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

**pp.** **"Substantial Consummation"** shall mean that this Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**qq.** **"Tax"** means: any  net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority.

**rr.** **"U.S. Trustee Fees"** means all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

**1.2** **Rules of Interpretation and Computation of Time**

**a.** **Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in this Plan to an existing document means such document as it may have been or may be amended, modified or supplemented pursuant to this Plan or Confirmation Order; (iv) any reference to a Creditor includes that Entity's successors and assigns; (v) all references in this Plan to Sections and Articles are references to Sections

and Articles of this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (viii) subject to the provisions of any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (ix) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

**b.    Computation of Time**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## <u>CLASSES OF CLAIMS AND INTERESTS</u>

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and  Priority Tax Claims, as described in Section 3.1, have not been classified and thus are excluded from the Classes.  A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

**Class 1** consists of the Secured Claim of Northwest Federal Credit Union (POC 2)

**Class 2** consists of the Secured Claim of JPMorgan Chase Bank, N.A. (POC 6)

**Class 3** consists of the Secured Claim of Federal National Mortgage Ass. (POC 9)

**Class 4** consists of the Secured Claim of TD Auto Finance, LLC (POC 10)

**Class 5** consists of the Claim of Florida Department of Revenue (POC 11)

**Class 6** consists of the Claim of the Internal Revenue Service (POC 5)

**Class 7** consists of the General Unsecured Claims

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

**3.1 Unclassified Claims**

    **a.    Payment of Administrative Claims**

        **(i)    Administrative Claims in General**

Except as otherwise provided herein or unless otherwise agreed to by the holder of an Administrative Claim and the Debtor, each holder of an Allowed Administrative Claim will receive from the Debtor, in full satisfaction of its Administrative Claim, Cash equal to the allowed amount of such Administrative Claim either (A) on the Distribution Date or (B) if the Administrative Claim is not allowed as of the Effective Date, within 30 days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order.

        **(ii)    U.S. Trustee Fees**

On the Distribution Date, the Debtor shall pay to the United States Trustee the United States Trustee Fees then due and owing and simultaneously provide to the U.S. Trustee an appropriate affidavit indicating cash disbursements for all relevant periods. Notwithstanding anything contained in this Plan to the contrary, the Debtor shall further pay the United States Trustee Fees to the United States Trustee after the Effective Date, for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Bankruptcy Code.

        **(iii)    Ordinary Course Liabilities**

Allowed Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of its business will be paid by the Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims.

        **(iv)    Bar Dates for Administrative Claims**

Except as otherwise provided herein, requests for payment of Administrative Claims must be filed and served on the Debtor in accordance with Bankruptcy Rule 3071-1. Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by such date will be forever barred from asserting such Administrative Claims against the Debtor, or its Assets and such Administrative Claims will be deemed waived and released as of the Effective Date with the exception of Debtor' Attorney's Fees.

### 3.2 Classes of Claims

#### a. Class 1 (Northwest Federal CU):

Class 1 consists of Northwest Federal Credit Union's Secured Claim (POC 2) against a 2015 GMC Yukon. This vehicle has been surrendered back to the creditor as the indubitable equivalent and shall receive no disbursement under this Plan.

*Voting/Lien: Class 1 is unimpaired and therefore is not entitled to vote on this Plan. Northwest Federal CU retains its lien to the same extent it had prior to the Petition Date.*

#### b. Class 2 (JPMorgan Chase Bank, N.A.):

Class 2 consists of JPMorgan Chase Bank, N.A.'s Secured Claim (POC 6) against a 2013 Mercedes-Benz CLS63. The Debtor will continue to pay the contract payment of $699.02. This contract shall have the same maturity date as the original contract, June 2023.

*Voting/Lien: Class 2 is unimpaired and therefore is not entitled to vote on this Plan. JPMorgan Chase Bank, N.A. retains their lien to the same extent it had prior to the Petition Date.*

#### d. Class 3 (Federal National Mortgage Ass.):

Class 3 consists of Federal National Mortgage Ass.'s Secured Claim (POC 9) against 6976 SW 39th Street, Unit 304, Davie, Florida 33314. This debt is being paid for by a co-debtor and shall receive no disbursement under this Plan.

*Voting: Class 3 is unimpaired and therefore is not entitled to vote on this Plan. Federal National Mortgage Ass. retains its lien to the same extent it had prior to the Petition Date.*

#### e. Class 4 (TD Auto Finance, LLC):

Class 4 consists of TD Auto Finance, LLC's Secured Claim (POC 10) against a 2013 Mercedes-Benz SL63. The Debtor shall pay $59,025.00 amortized over sixty (60) months with 6% per annum in satisfaction of the secured portion of the claim. The monthly payment is $1,141.12. This payment began consistent with Doc. No. 85. No pre-payment penalty shall be assessed on this Class. The remaining portion of the claim shall receive distribution in Class 7.

*Voting/Lien: Class 4 is impaired and therefore is entitled to vote on this Plan. TD Auto Finance, LLC retains its lien to the same extent it had prior to the Petition Date.*

### f.    Class 5 (Florida Department of Revenue):

Class 5 consists of the Claim of the Florida Department of Revenue (POC 11). This debt shall be paid back by the underlying entities that incurred the indebtedness. This creditor shall receive no distribution under this Plan. The indebtedness shall not be effected in anyway by any discharge entered in this case consistent with 11 U.S.C. 523(a)(1).

***Voting: Class 5 is unimpaired and therefore is not entitled to vote on this Plan.***

### g.    Class 6 (Internal Revenue Service):

Class 6 consists of the Claim of the Internal Revenue Service regarding various taxes owed. The Debtor will pay the full priority/secured amount, $1,731,038.08 over 60 months from the Petition date with 4% interest as follows: $10,000.00 a month for months one (1) through ten (10); $17,000.00 a month for months eleven (11) through twenty (20); $25,000.00 for months twenty-one (21) through thirty-five (35); and the remaining amount owed will balloon and be paid in full in month thirty-six (36). The general unsecured portion of the claim shall be treated in Class 7. No pre-payment penalty shall be assessed on this Class.

***Voting/Lien: Class 6 is unimpaired and therefore is not entitled to vote on this Plan.***

### h.    Class 7 (General Unsecured Creditors):

This class consists of all general unsecured creditors of the Debtor.

The Debtor will pay general unsecured claims $10,000.00 in full satisfaction of all claims in this class. The payment will be made on the 1st of the month following any confirmation order becoming final and non-appealable. Creditors will receive a pro-rata distribution consistent with the attached Unsecured Claims Breakdown. Only creditors on the Unsecured Claims Breakdown will receive a distribution in this class.

***Voting: Class 7 is impaired and therefore is entitled to vote on this Plan.***

## ARTICLE IV
## ACCEPTANCE OR REJECTION AND DISTRIBUTION

### 4.1    *Impaired Classes of Claims Entitled to Vote*

Two classes are impaired under this Plan. Therefore, two classes are entitled to vote.

### 4.2    *Deemed Acceptance by Classes*

Five classes are unimpaired and therefore five classes are deemed to accept the Plan.

**4.3** *Method of Distribution under this Plan*

(a) Subject to Rule 9010, and except as otherwise provided herein or by court order, all Distributions under this Plan shall be made by the Debtor to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Effective Date unless the Debtor has been notified in writing of a change of address, including by the filing of a Proof of Claim, or an assignment of Claim, by such holder that provides an address different from the address reflected on the Schedules.

(b) Any payment of Cash made by the Debtor pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c) Any payment or Distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

d) Any Distributions of Cash by the Debtor under this Plan that are unclaimed by a holder of an Allowed Claim for a period of ninety days shall be deemed abandoned. In no event does the Debtor have any obligation to investigate or attempt to locate the holders of such claims.

e) Distributions returned from creditor or returned as undeliverable shall not be redelivered unless creditor requests in writing. Any distribution returned from creditor will be notated by Debtor and that distribution shall be deemed forfeited.

f) Ratable distributions to holders of Allowed Claims will not be made if such distribution will result in a distribution amount of less than $50.00, unless a request therefore is made in writing to the Debtor.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THIS PLAN/DISCHARGE

This Plan shall be implemented consistent with 11 U.S.C. § 1123. This Plan is a reorganization plan and is premised upon and contemplates the continued employment of the Debtor and the expansion of his income through pay increases as a doctor and businessman. Upon confirmation of this Plan, and in accordance with the Confirmation Order, the Debtor will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan.

## 5.1 Revesting of Assets

Pursuant to Section 1141 of the Bankruptcy Code, the property of the Estate of the Debtor shall vest in the upon entry of a Discharge in this case.

**5.2     Causes of Action**

As of the Effective Date, pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, any and all litigation claims accruing to the Debtor and Debtor-in-Possession, including, without limitation, litigation claims under Sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, shall become revested assets of the Debtor's Estate, and the Debtor shall have the authority to commence and prosecute such litigation claims for the benefit of the Debtor' Estate and holders of Allowed Claims and Interests.

**5.3     Objection to Claims**

The Debtor shall have ninety (90) days after the Confirmation Order becomes final to object to any claims filed in the case.

**5.4     Discharge of Debtor**

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all unsecured payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**5.5     Injunction**

Except and otherwise provided in the Plan, all Claimants of the Debtor are enjoined from threatening, commencing or continuing any lawsuit or other legal or equitable action against the Debtor or the Debtor' property to recover any Claim or Interest.

**5.6     Injunction Against Interference with this Plan**

Upon the entry of a Confirmation Order with respect to this Plan, all holders of claims, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Assumed Executory Contracts and Unexpired Leases**

The Debtor assumes the lease with Daimler Trust (POC 1). The Debtor expressly rejects any other lease/executory contract that have not already been either assumed or rejected through separate Motion. The Debtor reserves the right to file a separate Motion for Assumption/Rejection up and through the entry of a Final Decree.

# ARTICLE VII
## VARIOUS PROVISIONS

### 7.1     Claim Transfers

The Debtor may, but shall have no obligation to recognize the transfer of, or the sale of, any Allowed Claim that occurs after the Effective Date and will be entitled for all purposes herein to recognize and make distributions only to those holders of Allowed Claims that are holders of such Claims, or participants therein, as of the Effective Date.

Except as otherwise provided by Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Effective Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Effective Date.

### 7.2     Compliance with Tax Requirements

To the extent applicable, the Debtor will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan will be subject to such withholding and reporting requirements. The Debtor will be authorized to take any actions that it determines, in their reasonable discretion, to be necessary, appropriate or desirable to comply with such withholding and reporting requirements; provided, however, that, notwithstanding the foregoing or any other provision of this Plan, each Entity receiving a distribution pursuant to this Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such distribution, including withholding obligations.

### 7.3     Payments.

Payments to the various Classes under this Plan shall commence on the first (1st) day of the month after the date that the Plan becomes final and non-appealable unless otherwise specifically stated with respect to treatment of each particular class.

### 7.4     Causes for Bankruptcy Filing.

The Debtor has been a very successful doctor and businessman for many years in Northeast Florida. Unfortunately, a business in which the Debtor was an owner sold a very large asset that had been previously depreciated which lead to a rather large capital gains tax being assessed against the Debtor. Because of this the Internal Revenue Service began aggressively collecting against the Debtor. This action lead to the necessity to file for Chapter 11 protection in order to sustain payments to creditors and live.

### 7.3     Liquidation.

Given that most of the Debtor's assets are either under-secured or exempt there is very little left that would be available to unsecured creditors. In this case, even if the Debtor

had a million dollars of unexempt and unencumbered assets they would still leave no distribution to General Unsecured Creditors given the Internal Revenue Service has a Secured/Priority Claim of $1,731,038.08. In any Chapter 7 liquidation General Unsecured Creditors would have no chance of recovery.

## ARTICLE VIII
## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and this Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     to hear and determine applications for the assumption or rejection of Executory Contracts and Unexpired Leases, and the allowance of Claims resulting therefrom;

(b)     to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters;

(c)     to hear and determine all litigation claims, including, without limitation, litigation claims commenced by the Debtor or any other party in interest with standing to do so, pursuant to Sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, collection matters related thereto, and settlements thereof;

(d)     to hear and determine any objections to or the allowance, classification, priority, compromise, or payments of any Administrative Claims or Claims (including the validity and extent of any liens);

(e)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided in this Plan;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)     to issue such orders in aid of execution and consummation of this Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(h)     to consider any amendments to or modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in this Plan, or any order of the Court, including, without limitation, the Confirmation Order;

(i)     to hear and determine all applications for compensation and reimbursement of expenses of Professionals under Sections 330 and 331 of the Bankruptcy Code;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan;

(k)     to recover all Assets of the Debtor and Property of the Estate,

wherever located;

(l)    to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)    to enforce this Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in this Plan and the complete execution of the Class 2 loan documents;

(n)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(o)    to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(p)    to hear any other matter not inconsistent with the Bankruptcy Code; and

(q)    to hear and determine any disputes regarding the fees and costs of any Professionals seeking compensation;

(r)    to hear and determine any motions to compromise under Rule 9019 or otherwise;

(s)    to hear and determine any motion to sell assets;

(t)    to hear and determine any issues relating to the Debtor' abandonment of assets; and

(u)    to enter a final decree closing the Case; *provided however*, that nothing in this Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Debtor under applicable environmental laws.

**ARTICLE IX**
**MISCELLANEOUS PROVISIONS**

**9.1    Exemption from Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with this Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**9.2     Modification of this Plan**

Effective as of the date this Plan is filed, and subject to the limitations contained in this Plan: (a) the Debtor-In-Possession reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**9.3     Revocation of Plan**

The Debtor-In-Possession reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to file a subsequent Chapter 11 plan.   If the Debtor-In-Possession revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then: (a) this Plan will be null and void in all respects; (b) any settlement or compromise embodied in this Plan, any assumption of an Executory Contract or Lease, and any document or agreement executed pursuant to this Plan will be deemed null and void; and (c) nothing contained in this Plan will: (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtor-In-Possession or any other Entity; or (iii) constitute an admission of any sort by the Debtor-In-Possession or any other Entity.

**9.4     Filing of Additional Documents**

On or before Substantial Consummation of this Plan, the Debtor-In-Possession, and if necessary, upon notice will obtain Bankruptcy Court approval of such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**9.5     Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided, however, that any such alteration or interpretation must be in form and substance acceptable to the Bank and the Entity directly affected by such provision.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**9.6     Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in this Plan

will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**9.7  Savings Clause**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

**9.8  Remedy of Defects**

After the Effective Date, the Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors or holders of Interests, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

**9.9  Attorney's Fees and Costs**

In the event that any suit or action is instituted under or in relation to this Plan or Order Confirming Plan, including without limitation to enforce any provision in this Plan, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this Agreement, including without limitation, such reasonable fees and expenses of attorneys and accountants, which shall include, without limitation, all fees, costs and expenses of appeals.

**9.10  Loan Documents**

All creditors which have a mortgage lien on any asset of the Debtor, other than their homestead property, shall within sixty (60) days of the Effective Date prepare and cause to be recorded in the appropriate county an official loan modification that incorporates the terms of this Plan consistent with the one attached.

**9.11  Escrow Accounts**

All non-homestead secured creditors' loans shall be non-escrow.  Any escrow disbursed inconsistent with this Plan shall not be recoverable from the Debtor.

**9.12  Payment Grace Periods**

All payments under this Plan shall have a fifteen (15) day grace period and shall not be deemed late prior to the expiration of the period.

### 9.13 Surrender of Collateral

Any collateral surrendered in this Plan shall be in full satisfaction of the secured creditor's entire claim, unless stated otherwise in the specific Class above.

/a/ Jason A. Burgess

**Jason A. Burgess 40757**
**Attorney for the Debtor-In-Possession**
1855 Mayport Road
Atlantic Beach, Florida 32233
(904) 372-4791
jason@jasonAburgess.com

**Dr. Fady Abdo El-Bahri**

**Exhibit A**
*Unsecured Claim Breakdown*

**Barhi Unsecured**

| Creditor | Full Claim Amount | Unsecured Amount | Claim # |
|---|---|---|---|
| Suntrust Bank | $ 187,364.24 | $ 187,364.24 | 3 |
| OneMain Fin. | $ 15,300.59 | $ 15,300.59 | 4 |
| IRS | $ 1,733,595.15 | $ 2,557.07 | 5 |
| Memorial Hospital | $ 990.82 | $ 990.82 | 7 |
| TD Auto Finance | $ 62,823.54 | $ 3,798.54 | 10 |
| American Express | $ 9,899.00 | $ 9,899.00 | NCF |
| Gus Korkmaz | $ 5,000.00 | $ 5,000.00 | NCF |
| | | $ 224,910.26 | |

**Exhibit B**
*Payment Breakdowns*

Class 4 – TD Auto Finance, LLC

Months 1 – 60 - $1,141.12

Class 6 – Internal Revenue Service

Months 1 – 10 - $10,000.00
Months 11 – 20 - $17,000.00
Months 21 – 35 - $25,000.00
Month 36 Balloon Payment Approximation: $1,086,038

**Exhibit C**
Case Management Summary

In re:

                                       **CASE NO.: 3:17-bk-03265**

**Fady Abdo El-Bahri**                       **Chapter 11**

      **Debtor.**

_____/

### DEBTOR'S CHAPTER 11 CASE MANAGEMENT SUMMARY

Fady Abdo El-Bahri, individual debtor and debtor-in-possession (the "Debtor"), by and through his undersigned counsel, pursuant to Administrative Order 2009-1 Establishing Initial Procedures in Chapter 11 Cases filed in the United States Bankruptcy Court for the Middle District of Florida, hereby files this Chapter 11 Case Management Summary (the "Summary").

### INTRODUCTION

The Debtor filed their petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on the 4th day September 2017 (the "Petition Date").

### CASE MANAGEMENT ITEMS

**I. Description of the Debtor's Business**

The Debtor's main business is being a doctor in the Northeast Florida area but the Debtor also have various business interest. The Debtor has practiced successfully for years and has paid his debts on time. Unfortunately the sale of business assets lead to an unknown and unanticipatedly large capital gain that ultimately made the Debtor liable for an income tax amount that was not payable in one lump sum.

**II. Location of Debtor's Operations**

The Debtor's mailing address is 5373 Oak Bay Drive N., Jacksonville, Florida 32277.

**III. Reasons for Filing Chapter 11**

*See*, Part I above.

**IV**. **List of Officers and Directors and Their Salaries and Benefits at Time of Filing and During the One Year Prior to Filing**

N/A

**V Amounts Owed to Various Classes of Creditors**

The Debtor owes just over $761,000.00 to secured creditors and has business guarantees as well as a very large debt for income tax to the Internal Revenue Service.

**VI. General Description and Approximate Value of the Debtors' Current and Fixed Assets**

The Debtor's assets consist primarily of personal property as well as business ventures.

**VII. Number of Employees and Amount of Wages Owed as of Petition Date**

None.

**VIII. Status of Debtors' Payroll and Sales Tax Obligations**

By information and belief, the Debtor may owe some portion of payroll and sales taxes related to a business venture.

**IX. Anticipated Emergency Relief Within 14 Days of Petition Date**

None.

WHEREFORE, the Debtors respectfully submit this Summary.


Respectfully Submitted on the 4th day of September 2017.


Submitted by:  /s/ Jason A. Burgess
Jason A. Burgess
1855 Mayport Road
Atlantic Beach, Florida 32233
(904) 372-4791
(904) 372-4994 facsimile
jason@jasonAburgess.com
*Counsel for Debtor-In-Possession*